In re RECREATIVE TECHNOLOGIES CORP.

No. 95–1337.

United States Court of Appeals, Federal Circuit.

May 13, 1996.

---

Timothy J. Martin, Timothy J. Martin, P.C., Lakewood, Colorado, argued for appellant.

James T. Carmichael, Office of the Solicitor, Arlington, Virginia, argued for appellee. Nancy J. Linck, Solicitor, Albin F. Drost, Deputy Solicitor and Murriel E. Crawford, Associate Solicitor, Office of Solicitor, Arlington, Virginia, were on the brief, for appellee.

James A. Lowe and Sandeep Seth, Denver, Colorado, were on the brief, for Amicus Curiae, Preferred Response Marketing, Ltd.

1. *In re Recreative Technologies Corp.*, Appeal No. 93–4008 (Bd. Pat.App. & Int. March 29, 1995),

Before ARCHER, Chief Judge, and RICH and NEWMAN, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Recreative Technologies Corp. ("Recreative") appeals the decision of the Patent and Trademark Office ("PTO") Board of Patent Appeals and Interferences holding claims 1, 2, and 4 of United States Patent No. 4,912,-800 ("the '800 patent"), upon reexamination, to be unpatentable.[1] We conclude that the Board exceeded the statutory authorization that governs reexamination. We reverse the decision of the Board, and remand for further proceedings consistent with this opinion.

## BACKGROUND

The '800 patent is directed to a cleaning device for use by golfers. The device is structured to be secured to a golf bag for use to clean items such as golf clubs, balls, and shoes. The cleaning device is comprised of several elements including a water absorbent towel body, a brush member secured to the towel body and a mounting means to releasably mount the towel body/brush to a golf bag. After Recreative sued Preferred Response Marketing ("Preferred") for infringement, Preferred requested reexamination of the '800 patent, citing as new references five patents and three publications, and stating that these new references raised a substantial new question of patentability. The PTO granted the request for reexamination.

On reexamination the examiner rejected claims 1, 2, 4–7, and 17 as unpatentable on the ground of obviousness, 35 U.S.C. § 103, in view of a reference to Ota. The examiner did not reject any claim on any of the eight new references cited by Preferred, and did not cite any reference other than Ota. The examiner confirmed original claims 13–16 and 18–20 and held patentable original claims 3 and 8–12. The Ota reference had been cited in the original examination on the same ground, obviousness, and the claims had been held patentable over Ota.

recons. denied January 31, 1995.

Recreative appealed the reexamination rejection to the Board. The Board reversed the examiner's rejection of claims 1, 2, 4–7, and 17, holding that the claims were not obvious in view of Ota. However, the Board *sua sponte* rejected claims 1, 2, and 4 based on the same Ota reference, but now under 35 U.S.C. § 102, for lack of novelty. This appeal followed.

## DISCUSSION

### *The Reexamination Statute*

Recreative states that the PTO had no authority to reject the claims, on reexamination, on the same ground on which the application was examined and the claims allowed during the original prosecution. Recreative states that the reexamination statute limits reexamination to "a substantial new question of patentability," and does not authorize repetition of a rejection on the same grounds that had been resolved in favor of the applicant during the original examination. 35 U.S.C. § 303 requires the examiner to determine whether a "substantial new question of patentability" is raised by the reexamination request. Only if a new question of patentability is raised, can the patent be reexamined.

Recreative states that the examiner merely repeated the same rejection for obviousness, based on the same Ota reference, as during the initial examination. Recreative states that it had successfully traversed the rejection based on the Ota reference in the initial examination, and that the reexamination statute was written to limit reexamination to new questions.

The Commissioner argues that "[o]nce initiated, the scope of reexamination includes reexamination of the patent in view of *any* pertinent patents and printed publications," new or old. The Commissioner thus contends that the repeat examination on the same ground was proper practice. However, the reexamination statute was designed to exclude repeat examination on grounds that had already been successfully traversed. Thus, the statute, on its face, does not accommodate the Commissioner's position.

■ The statute authorizes reexamination only when there is a substantial new question of patentability. A second examination, on the identical ground that had been previously raised and overcome, is barred. Thus, once it becomes apparent that there is no new question of patentability, it is improper to conduct reexamination on an old question that had been finally resolved during the initial examination. The Commissioner's argument that a different interpretation should prevail, and that the PTO has authority to reach a different result on reexamination on the identical ground, has led us to review the considerations that underlay the statute at the time of enactment.

### *Legislative History of Public Law 96–517*

The reexamination statute was an important part of a larger effort to revive the United States' competitive vitality by restoring confidence in the validity of patents issued by the PTO. *Patlex Corp. v. Mossinghoff,* 758 F.2d 594, 601, 225 USPQ 243, 248, *aff'd on reh'g* 771 F.2d 480, 226 USPQ 985 (Fed.Cir.1985). Congressman Robert Kastenmeier described the reexamination proposal as "an effort to reverse the current decline in U.S. productivity by strengthening the patent and copyright systems to improve investor confidence in new technology." 126 Cong. Rec. 29,895 (1980).

■ The proponents of reexamination anticipated three principal benefits. First, reexamination based on references that were not previously included in the patentability examination could resolve validity disputes more quickly and less expensively than litigation. Second, courts would benefit from the expertise of the PTO for prior art that was not previously of record. Third, reexamination would strengthen confidence in patents whose validity was clouded because pertinent prior art had not previously been considered by the PTO. *Patlex,* 758 F.2d at 602, 225 USPQ at 248–49. These benefits are achieved by authorizing the PTO to correct errors in the prior examination:

> The reexamination statute's purpose is to correct errors made by the government, to remedy defective governmental (not private) action, and if need be to remove patents that never should have been grant-

ed.... A defectively examined and therefore erroneously granted patent must yield to the reasonable Congressional purpose of facilitating the correction of governmental mistakes.

*Patlex,* 758 F.2d at 604, 225 USPQ at 250.

However, Congress recognized that this broad purpose must be balanced against the potential for abuse, whereby unwarranted reexaminations can harass the patentee and waste the patent life. The legislative record and the record of the interested public reflect a serious concern that reexamination not create new opportunities for abusive tactics and burdensome procedures. Thus reexamination as enacted was carefully limited to new prior art, that is, "new information about pre-existing technology which may have escaped review at the time of the initial examination of the patent application." H.R.Rep. No. 96–1307, 96th Cong., 2d Sess. 3 (1980), *reprinted in* 1980 U.S.C.C.A.N. 6460, 6462. No grounds of reexamination were to be permitted other than based on new prior art and sections 102 and 103. As explained in the legislative history, matters that were decided in the original examination would be barred from reexamination:

> This "substantial new question" requirement would protect patentees from having to respond to, or participate in unjustified reexaminations. Further, it would act to bar reconsideration of any argument already decided by the Office, whether during the original examination or an earlier reexamination.

*Id.* at 7, *reprinted in* 1980 U.S.C.C.A.N. at 6466.

Thus the statute guarded against simply repeating the prior examination on the same issues and arguments. Commissioner Diamond explained the importance of this safeguard:

> [The proposed statute] carefully protects patent owners from reexamination proceedings brought for harassment or spite. The possibility of harassing patent holders is a classic criticism of some foreign reexamination systems and we made sure it would not happen here.

*Industrial Innovation & Patent & Copyright Law Amendments: Hearings on H.R. 6933,* *6934, 3806 & 214 Before the Subcomm. on Courts, Civil Liberties and the Administration of Justice of the House Comm. on the Judiciary,* 96th Cong., 2d Sess. 594 (1980) (statement of Sidney Diamond, Cmr. of Patents & Trademarks).

 In this case, the Commissioner points out that the Manual of Patent Examining Procedure authorizes the procedure that was followed. Section 2258 of the M.P.E.P. states that

> [O]nce initiated, the scope of reexamination includes reexamination of the patent in view of any pertinent patents or printed publications, including issues previously addressed by the Office.

Thus the Commissioner argues that it is within the examiner's authority to apply the old ground of rejection on the Ota reference, as the only ground of rejection. We can not agree. This is the very action against which the statute protects. The Commissioner's argument that reexamination, once begun, can be limited to grounds previously raised and finally decided, can not be accommodated by the statute, and is directly contravened by the legislative history. Although Congress may entrust the administrative agency with administration of a statute, the agency can not depart from the statutory purpose.

> [The courts] must reject administrative constructions of the statute, whether reached by adjudication or by rulemaking, that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement.

*Patlex,* 771 F.2d at 487, 226 USPQ at 989 (quoting *Federal Election Commission v. Democratic Senatorial Campaign Committee,* 454 U.S. 27, 31–32, 102 S.Ct. 38, 41–42, 70 L.Ed.2d 23 (1981)).

We take note that § 2258 of the M.P.E.P. was not among the original reexamination rules that were adopted to implement the reexamination statute. *See* revision 7 to the 4th edition, July 1981. The current text of § 2258 appeared in subsequent editions of the M.P.E.P. We do not know its genesis, yet it plainly exceeds the statutory authorization. It is also in apparent conflict with other procedural instructions in the Manual. Com-

pare M.P.E.P. § 2216, which states that requests for reexamination should point out how the questions of patentability newly raised are substantially different from those raised in the original prosecution. Also compare M.P.E.P. § 2242, which includes the following:

> If the prior art patents and printed publications raise a substantial new question of patentability of at least one claim of the patent, then a substantial new question of patentability is present, *unless it is clear to the examiner that the same question of patentability has already been decided* (1) [by a court] ... (2) by the Office either in the original examination, the examination of a reissue patent, or an earlier concluded reexamination.

(Emphasis added.) M.P.E.P. § 2242, which bars review of a question that "has already been decided," does not readily harmonize with M.P.E.P. § 2258, which permits reexamination of "issues previously addressed." Thus although the M.P.E.P. usefully implements the patent statute, when a section of the M.P.E.P. is inconsistent with the statute it must yield to the legislative purpose.

The statutory instruction that a new question of patentability must be raised is explicit in 35 U.S.C. § 303. Reexamination is barred for questions of patentability that were decided in the original examination. That power can not be acquired by internal rule of procedure or practice. The policy balance reflected in the reexamination statute's provisions can not be unilaterally realigned by the agency.[2] To the extent that M.P.E.P. § 2258 enlarges the statutory authorization, it is void. *See Patlex,* 771 F.2d at 487 (quoting *Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 369, 93 S.Ct. 1652, 1660, 36 L.Ed.2d 318 (1973) (quoting *Thorpe v. Housing Authority of the City of Durham,* 393 U.S. 268, 280–81, 89 S.Ct. 518, 525–26, 21 L.Ed.2d 474 (1969) (regulation promulgated under statutory authority not valid if not reasonably related to the purposes of the enabling legislation))).

### The Ota Reference

■ The question of patentability in view of the Ota reference was decided in the original examination, and thus it can not be a substantial new question. The Commissioner argues that the examiner failed to appreciate the Ota reference during the first examination, citing *Standard Havens Products, Inc. v. Gencor Industries, Inc.,* 897 F.2d 511, 13 USPQ2d 2029 (Fed.Cir.1990). In *Standard Havens* the Commissioner ordered reexamination in view of a reference that had not been cited in the original examination, the Commissioner observing that it was uncertain whether the reference had been considered. *Id.* at 514, 897 F.2d 511, 13 USPQ2d at 2031. Ota, however, had been cited. It was the subject of extensive prosecution during the original examination, and the rejection had been overcome.

On the reexamination appeal to the Board, the Board had reversed the examiner's reexamination rejection under § 103, stating that obviousness had not been shown. The Board then spontaneously rejected claims 1, 2, and 4 for lack of novelty, again based on Ota. Recreative points out that "anticipation is the epitome of obviousness," and that the original examiner necessarily considered novelty when examining the claims for obviousness. We need not reach this aspect, for this procedure by the Board can not overcome the fact that reexamination should not have been granted or should have been dismissed at the examination stage when no new grounds of rejection were raised.

It can not have been the statutory intent that a patentee would not know whether there was a new ground of rejection, as required for reexamination, until the reexamination was completed on the old ground, was appealed to the Board, and was decided by the Board not on the old ground but on a possibly new ground that was not previously part of the reexamination. Thus even on the Commissioner's argument that a rejection on

---

2. The Commissioner directs our attention to proposed legislative changes that would broaden the PTO's reexamination authority, and urges the court not to act contrary to the proposed changes. However, it is to the legislative process that enlargement of the reexamination procedure is consigned. Until changed by the Congress, the PTO and the courts are bound by the statute as it exists.

the same reference but styled as lack of novelty instead of obviousness is a "new ground"—an interesting question that we do not reach—the requirement of § 303 was not met. It would eviscerate the statutory safeguard to permit the Board to cure an improper reexamination with the creation of a new issue at the appellate stage of the reexamination proceeding.

In sum, the argument based on Ota did not present a new question of patentability. Recreative is correct that the reexamination should have been terminated when no other ground of rejection was raised.

*REVERSED AND REMANDED.*