**In re PORTOLA PACKAGING, INC.**

No. 96–1376.

United States Court of Appeals,
Federal Circuit.

April 7, 1997.

Julian Caplan, San Francisco, California, argued for appellant. With him on the brief were C. Michael Zimmerman and Janet E. Muller.

Nancy J. Linck, Solicitor, Patent and Trademark Office, Arlington, Virginia, argued for appellee. With her on the brief were Albin F. Drost, Deputy Solicitor, and Kevin T. Kramer, Associate Solicitor.

Before MICHEL, LOURIE, and CLEVENGER, Circuit Judges.

LOURIE, Circuit Judge.

Portola Packaging, Inc. appeals from the decision of the Patent and Trademark Office (PTO) Board of Patent Appeals and Interferences holding, after reexamination, that claims 1, 3–5, 7, and 8 of U.S. Patent 4,496,-066 are unpatentable. *In re Portola Packaging, Inc.,* No. 95–4121 (Bd. Pat.App. & Int. Feb. 16, 1996). Because the board exceeded its statutory authority by basing its decision solely on prior art previously considered by the PTO, we reverse.

## BACKGROUND

On July 27, 1983, Joseph J. Bullock, III filed an application directed to a flexible bottle neck/cap combination. During the examination of that application, claims 1 and 2 were rejected under 35 U.S.C. § 102 (1994) as anticipated by, *inter alia,* U.S. Patent 3,204,799 to Hunter, and claims 3–6 and 8–11 were rejected under 35 U.S.C. § 103 (1994) as obvious based on, *inter alia,* the combined teachings of U.S. Patent 4,202,455 to Faulstich and two other references. In response to this rejection, Bullock amended the existing claims and added several new claims. Eight of these claims issued in the '066 patent, which was later assigned to Portola.

On October 27, 1993, a request to reexamine the '066 patent was filed by a third party, who purported to raise three substantial new questions of patentability: (1) whether claims 1, 3, 5, and 7 were anticipated by the Hunter patent; (2) whether those claims were anticipated by U.S. Patent 4,177,906 to Von Hagel; and (3) whether all of the claims of the '066 patent were rendered obvious by the combined teachings of the Faulstich patent and,

*inter alia,* either the Hunter patent or the Von Hagel patent. The PTO granted the request. During reexamination, the examiner first rejected all of the claims as anticipated by, *inter alia,* the Von Hagel patent. In response, Portola canceled claims 2 and 6, and incorporated their subject matter into claims 1 and 5, respectively. The examiner subsequently rejected claims 1, 3–5, 7, and 8, *inter alia,* as obvious over the combined teachings of the Faulstich and Hunter patents. The board affirmed the examiner's rejection solely on that ground. Portola now appeals to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A) (1994) and 35 U.S.C. §§ 141, 306 (1994).

## DISCUSSION

Portola argues that on reexamination the rejection based solely on the combined teachings of the Faulstich and Hunter patents was improper. Portola asserts that the reexamination statute, in light of its legislative history, does not permit rejections based solely on prior art that was before the PTO in an earlier examination. Accordingly, Portola does not dispute the statutory propriety of the initial bases for reexamination or the initial rejection on reexamination to the extent that it was based on the Von Hagel patent. However, Portola does contest the examiner's final rejection under § 103 and the board's decision affirming that rejection, neither of which relies on the Von Hagel patent. Portola requests that we reverse the board's decision and direct the PTO to issue a Certificate of Reexamination under 35 U.S.C. § 307(a) (1994), confirming the patentability of the amended claims.

In response, the Commissioner first argues that because the claims of the original application were never rejected under § 103 based on the specific combination of the Faulstich and Hunter patents, the rejection affirmed by the board is a new one that is permitted by the reexamination statute. The Commissioner notes the absence of evidence that the original examiner considered these two references in combination during the original application. Second, the Commissioner argues that because Portola amended

the claims during reexamination, all of the post-amendment reexamination proceedings were authorized by the reexamination statute, and that those proceedings necessarily concerned questions of patentability that are distinct from those addressed during the original examination.

Whether the rejection based on the combined teachings of the Faulstich and Hunter patents was permissible under the reexamination statute raises an issue of statutory interpretation, a question of law which we review de novo, see In re Kathawala, 9 F.3d 942, 944, 28 USPQ2d 1785, 1786 (Fed.Cir. 1993), without deference to the Commissioner's interpretation, see Merck & Co., Inc. v. Kessler, 80 F.3d 1543, 1549–50, 38 USPQ2d 1347, 1351 (Fed.Cir.1996), cert. denied, —— U.S. ——, 117 S.Ct. 788, 789, 136 L.Ed.2d 730 (1997). The ultimate objective when interpreting a statute is to give effect to the intent of Congress. Thus, our duty is "to find that interpretation which can most fairly be said to be imbedded in the statute, in the sense of being most harmonious with its scheme and with the general purposes that Congress manifested." NLRB v. Lion Oil Co., 352 U.S. 282, 297, 77 S.Ct. 330, 338, 1 L.Ed.2d 331 (1957). In discharging that duty, "we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy." Crandon v. United States, 494 U.S. 152, 158, 110 S.Ct. 997, 1001, 108 L.Ed.2d 132 (1990); see also Ingersoll–Rand Co. v. McClendon, 498 U.S. 133, 138, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990) ("To discern Congress' intent we examine the explicit statutory language and the structure and purpose of the statute.").

The reexamination statute provides, in pertinent part:

Within three months following the filing of a request for reexamination under the provisions of [35 U.S.C. § 302 (1994)], the Commissioner will determine whether a substantial new question of patentability affecting any claim of the patent concerned is raised by the request, with or without consideration of other patents or printed publications. On his own initiative, and [at] any time, the Commissioner may determine whether a substantial new question of patentability is raised by patents and publications discovered by him or cited under the provisions of [35 U.S.C. § 301 (1994)].

35 U.S.C. § 303(a) (1994) (emphasis added). Thus, the resolution of this appeal requires that we determine the meaning Congress intended to attribute to the statutory phrase "a substantial new question of patentability."

This court recently considered the meaning of this statutory phrase in the case of In re Recreative Technologies Corp., 83 F.3d 1394, 38 USPQ2d 1776 (Fed.Cir.1996). In that case, we reversed a decision of the board which held various claims invalid on reexamination. During the examination of the original application, the claims at issue were initially rejected under 35 U.S.C. § 103, based on a single prior art reference, Ota. Even though the PTO granted the request for reexamination based on eight references not considered by the original examiner, the first rejection made during the reexamination was again made under § 103 and was solely based on Ota. Id. at 1395, 38 USPQ2d at 1777. We held that the rejection based on the same prior art reference and the same statutory ground that was overcome during the original examination was barred during reexamination because the question of patentability raised by that rejection was previously considered by the PTO.

In view of Recreative Technologies, the PTO amended the Manual of Patent Examining Procedure (MPEP) which, although it does not have the force of law, provides guidance and instructions to examiners. See Refac Int'l, Ltd. v. Lotus Dev. Corp., 81 F.3d 1576, 1584 n. 2, 38 USPQ2d 1665, 1671 n. 2 (Fed.Cir.1996) ("The MPEP does not have the force and effect of law; however, it is entitled to judicial notice as the agency's official interpretation of statutes and regulations, provided it is not in conflict with the statutes and regulations."). The section entitled "Scope of Reexamination" was amended to narrow the grounds of rejection permitted during reexamination. That section, although not effective with respect to the present reexamination, now provides, in relevant part:

Once reexamination is ordered based on a proper substantial new question of patentability, grounds of rejection previously considered by the [PTO] may not be raised by the examiner. For this purpose, a ground of rejection was "previously considered" if it:

> 1. is applied to the same claimed subject matter as a previous rejection in the examination of the original patent or earlier concluded reexamination;
>
> 2. relies on the same combination of patents and printed publications as the previous rejection; and
>
> 3. applies the same statutory basis as the previous rejection.

MPEP § 2258 (6th ed. rev. 2, July 1996) (citation omitted). Thus, the amended section would permit the rejection affirmed by the board in this case because the rejected claims were amended by Portola during reexamination and the references were not cited in the same combination or with respect to the same statutory basis as during the original examination of the '066 patent.

If we accept Portola's arguments, it follows that PTO practice under MPEP § 2258 is inconsistent with the mandate of the reexamination statute. *See Federal Election Comm'n v. Democratic Senatorial Campaign Committee,* 454 U.S. 27, 32, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1981) ("[T]he courts are the final authorities on statutory construction. They must reject administrative constructions of the statute, whether reached by adjudication or by rulemaking, that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement."). On the other hand, if we adopt the Commissioner's arguments, we are necessarily led to the conclusion that PTO practice under the amended section is consistent with the intent and purposes of the reexamination statute.

The reexamination statute, Pub.L. 96–517, was enacted with the intent of achieving three principal benefits. Reexamination of patents by the PTO would (i) settle validity disputes more quickly and less expensively than litigation, (ii) allow courts to refer patent validity questions to an agency with expertise in both the patent law and technology, and (iii) reinforce investor confidence in the certainty of patent rights by affording an opportunity to review patents of doubtful validity. *See Patlex Corp. v. Mossinghoff,* 758 F.2d 594, 601, 225 USPQ 243, 248 (Fed. Cir.1985).

However, Congress did not authorize the PTO to evaluate patentability anew whenever there existed doubt as to a patent's validity. Rather, the PTO was authorized to reexamine an issued patent only within strictly defined limits. Congress recognized that holdings of patent invalidity by courts were mostly based on prior art that was not before the PTO. *Patent Reexamination: Hearings on S. 1679 Before the Senate Comm. on the Judiciary,* 96th Cong. 2 (1980) (opening statement of Senator Birch Bayh) ("All too often, patent holders find themselves in lengthy court proceedings where valuable patents are challenged on the grounds that the patent examiner missed pertinent data during the initial patent search."); *id.* at 14 (testimony of Sydney Diamond, Commissioner, U.S. Patent and Trademark Office) (referring to Gloria K. Koenig, *Patent Validity–A Statistical and Substantive Analysis* at § 5.05[4] (1974) in which the author found that from 1953 through 1967 "the proportion of invalid patents wherein uncited prior art [*i.e.,* prior art not before the PTO] figured into the result is between 66 and 80 percent"). Congress also was aware that newly-discovered prior art often is identified only after a patent is issued because a potential infringer generally has greater resources and incentives to search for and find prior art than does the PTO. *Hearings on S. 1679,* at 21–22 (testimony of Donald R. Dunner, President of the American Patent Law Association) ("[I]t is inevitable ... that all of the prior art will not be uncovered [by the PTO]. A determined advocate, desiring to do in a patent, spending tens of thousands of dollars in litigation situations, can often, if not always, find something that has not been considered by the [PTO].").

Thus, Congress provided for reexamination of patents, but it was also concerned about subjecting patentees to repeated examinations on the same prior art. It therefore

limited the scope of reexamination. As this court stated in *Recreative Technologies:*

> Congress recognized that [the] broad purpose [of reexamination] must be balanced against the potential for abuse, whereby unwarranted reexaminations can harass the patentee and waste the patent life. The legislative record and the record of the interested public reflect a serious concern that reexamination not create new opportunities for abusive tactics and burdensome procedures. *Thus, reexamination as enacted was carefully limited to new prior art, that is, "new information about pre-existing technology which may have escaped review at the time of the initial examination of the patent application."* H.R.Rep. No. 96–1307, [at] 3 (1980) *reprinted in* 1980 U.S.C.C.A.N. 6460, 6462. *No grounds of reexamination were to be permitted other than on new prior art* and sections 102 and 103. As explained in the legislative history, matters that were decided in the original examination would be barred from reexamination: "This 'substantial new question' requirement would protect patentees from having to respond to, or participate in unjustified reexaminations. Further, it would act to bar reconsideration of any argument already decided by the [PTO], whether during the original examination or an earlier reexamination." *Id.* at 7, *reprinted* [*in* ] 1980 U.S.C.C.A.N. at 6466.

83 F.3d at 1397, 38 USPQ2d at 1778 (emphasis added); *see also In re Etter,* 756 F.2d 852, 856, 225 USPQ 1, 4 (Fed.Cir.1985) (in banc) (citing the first quoted passage from H.R. Rep. 96–1307 and emphasizing the phrase *"escaped review at the time of the initial examination"*). Accordingly, reexamination was only intended for those instances in which the examiner did not have all of the relevant prior art at his disposal when he originally considered the patentability of an invention.

In light of this statutory purpose, we cannot agree with the Commissioner's arguments. First, we do not accept his argument that the absence of direct evidence that the original examiner considered the Faulstich and Hunter patents together in the context of § 103 indicates that the examiner did not so consider them and therefore that the rejection affirmed by the board was based on a substantial new question of patentability. The regulations that prescribe an examiner's conduct indicate that, in conducting an examination, an examiner must evaluate each cited reference and then determine which of those references, alone or in combination, provides the most appropriate statutory ground for rejecting the claims. *See* 37 C.F.R. § 1.106(b) ("In rejecting claims for want of novelty or for obviousness, the examiner must cite the best references at his command."). Therefore, it must be presumed that the original examiner considered the Faulstich and Hunter patents, both alone and in combination with each other and with all of the other cited references, before allowing the original claims.

To suggest otherwise, as urged by the Commissioner, is to imply that the original examiner did not conduct his analysis according to the governing regulations. However, government officials are presumed to have "properly discharged their official duties." *United States v. Chemical Found., Inc.,* 272 U.S. 1, 15, 47 S.Ct. 1, 6, 71 L.Ed. 131 (1926). If the references were in front of the examiner, it must be assumed that he or she reviewed them. Accordingly, we reject the Commissioner's suggestion that the PTO is entitled to conclude during reexamination that an earlier examination was not conducted properly and to do it again. Instead, the narrow mandate of the reexamination statute requires that reexamination proceedings be conducted in light of the presumption that earlier examinations complied with the applicable statutes and regulations and that earlier examiners did their work correctly with respect to the prior art references at their disposal. Whether the earlier examination was correct or not, reexamination of the same claims in light of the same references does not raise a substantial new question of patentability, which is the statutory criterion for reexamination.

Congress intended that on reexamination a patent holder would not have to argue that claims were valid over the same references that had been considered by the PTO during

the original examination. *See Etter*, 756 F.2d at 865, 225 USPQ at 10 (Nies, Smith & Bissell, JJ., concurring) ("Clearly, reexamination was not designed to allow the PTO simply to reconsider and second guess what it has already done."). A reexamination system that requires a patentee to revisit such arguments on reexamination, by permitting the PTO to redo what it was expected to have done earlier, would lead to the "burdensome procedures" Congress sought to avoid. *Recreative Techs.*, 83 F.3d at 1397, 38 USPQ2d at 1778.

■ We also reject the Commissioner's argument that the amendments made during reexamination created a substantial new question of patentability. That the claims were amended by Portola does not mean that a new examination of the amended claims involved substantial new issues of patentability. It is clear that the scope of a patent claim may not be enlarged by amendment during reexamination. *See* 35 U.S.C. § 305 (1994) ("No proposed amendment or new claim enlarging the scope of a claim of a patent will be permitted in a reexamination proceeding under this chapter."); 37 C.F.R. § 1.552(b) (1996) ("Amended or new claims presented during a reexamination proceeding must not enlarge the scope of the claims of the patent ...."); *see also Quantum Corp. v. Rodime, PLC*, 65 F.3d 1577, 1584, 36 USPQ2d 1162, 1168 (Fed.Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1567, 134 L.Ed.2d 666 (1996) (holding claims invalid because their scope was enlarged during reexamination). Thus, after the reexamination amendment, the claim could not cover subject matter broader than the scope of the claim that was originally allowed. *See In re Freeman*, 30 F.3d 1459, 1464, 31 USPQ2d 1444, 1447 (Fed.Cir.1994) (quoting *Tillotson, Ltd. v. Walbro Corp.*, 831 F.2d 1033, 1037 n. 2, 4 USPQ2d 1450, 1453 n. 2 (Fed.Cir.1987)) ("A claim that is broader in any respect is considered to be broader than the original claims even though it may be narrower in other respects."). It naturally follows then that when the original examiner examined the original claims in light of the cited prior art, the subject matter of the narrower, amended claims was necessarily considered in relation to the cited prior art.

■ We understand that the PTO's goal is to perform thoroughly and conscientiously its function of allowing applications claiming only patentable subject matter, and that in order to do so it wishes to take advantage of a second opportunity to examine claims it once issued when reexamination gives it that chance. However, Congress did not grant the PTO such a broad mandate by enacting the reexamination statute. Even when the door to the reexamination gate is opened, the PTO is not freed from the limitations Congress placed on the reexamination process. Whatever the basis on which reexamination is granted, it was intended to deal only with substantial new questions of patentability, essentially those based on prior art that was not before the examiner during an earlier examination. Those circumstances are not in the case before us.

■ Accordingly, consistent with this court's holding in *Recreative Technologies*, 83 F.3d at 1398, 38 USPQ2d at 1779 ("Reexamination is barred for questions of patentability that were decided in the original examination."), we hold that a rejection made during reexamination does not raise a substantial new question of patentability if it is supported only by prior art previously considered by the PTO in relation to the same or broader claims. Claim amendments made during reexamination, which necessarily cannot broaden the scope of the claims, do not give the PTO authority to revisit previously considered questions of patentability. The cited guidelines of MPEP § 2258 are therefore contrary to the mandate of the reexamination statute to the extent they are inconsistent with this ruling.

■ Since the original bases for concluding that a substantial new question of patentability existed to justify reexamination were withdrawn by the PTO during reexamination, leaving only arguments based on references previously considered by the PTO, the reexamination should have been terminated. *See Recreative Techs.*, 83 F.3d at 1396, 38 USPQ2d at 1777 ("[O]nce it becomes apparent that there is no new question of patentability, it is improper to conduct reexamina-

tion on an old question that had been finally resolved during the initial examination."). In this case the board should have terminated the reexamination of the '066 patent once it became apparent (after it reversed the examiner's other rejection) that the sole remaining ground for rejecting the claims was based on previously considered references.[1]

## CONCLUSION

The rejection based on the Hunter and Faulstich patents did not raise a substantial new question of patentability concerning the claims of the '066 patent, either as issued or as amended during reexamination. Because no other proper ground of rejection was asserted, the decision of the board is

*REVERSED.*

---

1. We decline Portola's invitation to evaluate the improper rejection on its merits. Just as it is inappropriate for the PTO to reevaluate previously considered questions of patentability on reexamination, it is inappropriate for this court to evaluate such questions on appeal from a reexamination proceeding.