NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent. It is a public record.

# United States Court of Appeals for the Federal Circuit

05-1378

ATHLETIC ALTERNATIVES, INC.,

Plaintiff-Appellant,

v.

BENETTON TRADING USA, INC.,
(formerly known as Benetton Sportsystem USA, Inc.,
and Successor in Interest to Prince Manufacturing, Inc.)

Defendant-Appellee.

_____

DECIDED: March 31, 2006

_____

Before MICHEL, <u>Chief Judge</u>, MAYER, and BRYSON, <u>Circuit Judges</u>.

PER CURIAM.

I

Athletic Alternatives, Inc., ("AAI") owns U.S. Patent No. 5,197,731 ("the '731 patent"), which is directed to a sports racquet having an interwoven string bed in which the ends of the strings are anchored in frame holes that lie alternately above and below the plane of the string bed. That configuration of string ends is referred to as "splay," and the distance between the holes above and below the plane is referred to as the splay distance or degree of splay. We <u>affirm in part</u> and <u>reverse in part</u>.

In 1990, AAI and Prince Manufacturing, Inc., to which Benetton Trading USA, Inc., is a successor in interest, entered into a confidentiality agreement regarding AAI's "Redemption Stringing System." Under that agreement, Prince and AAI shared ideas on racquet designs, but they ultimately failed to reach a mutually satisfactory licensing arrangement. Prince subsequently released its Vortex tennis racquet. The Vortex racquet contained cross strings (lateral strings) having two different degrees of splay, 2 millimeters in some portions of the racquet and 4.5 millimeters in other portions.

In 1992, AAI sued Prince for infringement of U.S. Patent No. 5,037,097 (the parent of the '731 patent) and trade secret misappropriation. Prince separately sued for a declaratory judgment of non-infringement and invalidity with respect to the '731 patent. Those two cases were eventually consolidated. The parties stipulated to a dismissal of AAI's trade secret misappropriation claim without prejudice, and to a stay of the declaratory judgment action involving the '731 patent. The district court then granted summary judgment of noninfringement of the '097 patent. On appeal from that judgment, this court affirmed. Athletic Alternatives, Inc. v. Prince Mfg., Inc., 73 F.3d 1573 (Fed. Cir. 1996). In 1997, Prince sought and obtained a dismissal of its declaratory judgment claim without prejudice.

In 1996, AAI requested reexamination of the '731 patent. Claims 1 and 2 were initially rejected by the examiner as anticipated by prior art including French Patent No. 2,276,845 to Martel. On appeal, however, the Board of Patent Appeals and Interferences reversed the rejection, explaining that the Martel reference is silent as to the direction in which the opposite ends of a string are splayed. In response to the examiner's observation that whether string ends splay in opposite directions depends on

05-1378                                        2

whether there is an odd or even number of longitudinal main strings, the Board held that Martel does not inherently disclose a racquet with an even number of longitudinal strings and thus does not disclose all the limitations of the '731 patent.

Shortly thereafter, AAI filed the instant action. With respect to claims 1-2 and 8-9, the district court granted summary judgment for Prince, finding those claims obvious in light of the Martel prior art reference. The district court also dismissed AAI's claim for breach of contract, finding it barred by the statute of limitations. Following a bench trial, the court held that Prince's racquets do not infringe claim 3 and that claims 3-5 are invalid for indefiniteness.

II

1. Claim 3 of the '731 patent requires that string ends anchored in "the sides of said frame . . . are splayed to a greater degree in the regions where the length of said ends is greater." As a matter of claim construction, the district court ruled that the quoted language "requires two or more splay distances along the sides of the racquet." AAI states that it does not challenge the district court's construction of claim 3. It argues, however, that the Vortex racquets infringe claim 3 because the sides of the Vortex racquets contain more than one splay distance. In particular, AAI asserts that at least one lateral string on each of the accused racquets (the "disputed string") is anchored in the "side" and has a splay distance of 2 millimeters, as opposed to the 4.5 millimeter splay distances of all the other strings anchored along the racquet's side.

In its Markman order, the district court observed that the written description and figures of the '731 patent characterize the racquet frame as being divided into a "tip," a "heel," two "sides," and four "corners," with the tip and heel separated from the sides by

the corners. In its subsequent opinion, the court noted that Figure 8 indicates that the term "corners" refers to those portions of the racquet frame that contain both longitudinal and lateral strings, whereas the term "sides" refers to those portions that contain only lateral strings. The court also explained that the specification uses the term "corners" to mean "those regions . . . where it is 'desirable' to have 'minimal [splay distance]' to 'facilitate the stringing of the racquet.'" See '731 patent, col. 8, ll. 39-44. The court concluded that claim 3, "in reference to the 'sides,' calls for increased splay in 'the regions where the length of said ends is greater.'" With respect to AAI's infringement argument, the court found that the disputed strings in the accused racquets are anchored in the corners, not the sides, and that the accused racquets therefore "have only a single degree of splay along the sides and therefore do not infringe claim 3 of the '731 patent."

In light of AAI's acceptance of the district court's claim construction, its appeal targets only the district court's factual finding that the Prince racquets do not infringe because the disputed strings are anchored in the corners and thus all of the strings on the sides have an equal degree of splay. We review that finding of fact for clear error, and we reverse only if "on the entire evidence [we are] left with the definite and firm conviction that a mistake has been committed." Biovail Corp. Int'l v. Andrx Pharms., Inc., 239 F.3d 1297, 1300 (Fed. Cir. 2001).

The district court noted that Prince's Director of Research and Development testified that the splay of the disputed string in each of the accused racquets was reduced "in order to facilitate stringing." Moreover, the court found that the degree of splay in the regions of the sides where the string ends are longer is 4.5 millimeters, the

same amount as in the regions of the sides where the string ends are shorter. In what the court referred to as the "transition regions between tip and sides, and the heel and the sides," i.e., the corners, the court found that the splay distance in the Prince racquets is only 2 millimeters. Because we find no clear error in the district court's factual determination that the disputed string in each of the accused racquets is anchored in the "corner" and not the "side," we uphold the district court's decision that Prince's accused racquets do not infringe claim 3 of the '731 patent.

2. AAI argues that the district court erred in granting summary judgment that claims 1-2 and 8-9 of the '731 patent are obvious in light of the Martel patent. Noting that the Board held Martel to be non-anticipating only because Martel was silent about the required number of main strings, the district court observed that all commercial tennis racquets on the market contained an even number of strings. The district court therefore concluded that, to a person skilled in the art, using an even number of strings would have been an obvious way of implementing Martel.

Citing In re Portola Packaging, Inc., 110 F.3d 786, 789 (Fed. Cir. 1997), AAI contends that "a district court should not invalidate claims where the exact prior art references were before the patent examiner who upheld the patent." Portola is not instructive in the present context, because it involves reexamination proceedings before the Patent and Trademark Office ("PTO"). Portola stands for the proposition that in reexamination the PTO is not supposed to reevaluate prior art that was considered in the original examination. It does not, however, limit a court's authority to address patent validity by restricting the court's right to consider prior art that was before the examiner. Moreover, the Board in this case addressed only the examiner's rejection for

anticipation; it did not address the question of obviousness. AAI's argument based on Portola is therefore without merit.

AAI further asserts that Martel does not suggest the use of an even number of strings and that it actually teaches away from the claimed invention because it calls for a racquet design that limits twisting of the racquet frame, while "implementation of an even number of strings . . . would result in . . . twisting of the sides of the racket frame." However, AAI does not explain why an even number of strings would produce twisting. In any event, Martel does not explicitly suggest using a racquet with an odd number of strings, and thus it makes sense to combine the stringing configuration of Martel with the predominant type of racquet on the market—one with an even number of main strings. We therefore uphold the district court's grant of summary judgment invalidating claims 1-2 and 8-9 as obvious.

3. AAI next contends that the district court erred in invalidating claims 3-5 for indefiniteness. The district court reasoned that the '731 patent contains no definition of either the term "side" or the term "region," that those terms are not used in the tennis industry, and that the '731 patent fails to explain "where the 'sides' end and the 'corners' begin."

To avoid invalidity for indefiniteness, a claim, read in light of the specification, must "reasonably apprise those skilled in the art both of the utilization and scope of the invention." Shatterproof Glass Corp. v. Libbey-Owens-Ford Co., 758 F.2d 613, 624 (Fed. Cir. 1985). If the claim "is subject to construction, i.e., it is not insolubly ambiguous, it is not invalid for indefiniteness." Bancorp Servs., L.L.C. v. Hartford Life Ins. Co., 359 F.3d 1367, 1371 (Fed. Cir. 2004). A claim will not be held invalid if the

"meaning of the claim is discernible, 'even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree.'" Id. (quoting Exxon Research & Eng'g Co. v. United States, 265 F.3d 1371, 1375 (Fed. Cir. 2001)).

In this case, the district court was able to distinguish portions of the racquet frame by construing the term "sides" as referring to those portions of the racquet frame located between the "corners." Figure 8 is also instructive because it indicates that the "sides" of the racquet can be differentiated from "corners" in that the "sides" contain only lateral strings ends, whereas the "corners" contain both lateral and longitudinal string ends. Moreover, the specification explains that the "corners" contain minimal splay distance to "facilitate the stringing of the racquet." Because the specification and the figures provide a sufficient basis for differentiating "sides" from "corners," we hold that the term "sides" is amenable to construction.

The specification further makes clear that the term "region" is not used in a specialized sense, but merely refers to a portion of the edge of the racquet, so that the claim language "in the regions where the length of said ends is greater" is equivalent to saying simply "where the length of said ends is greater." Accordingly, the term "regions" does not introduce insoluble ambiguity into the claim. In sum, we hold that the claim language is sufficiently precise to avoid invalidity on grounds of indefiniteness. We therefore reverse the portion of the district court's judgment invalidating claims 3-5 as being fatally indefinite.

4. AAI argues that the district court erred in dismissing its breach of contract claim. The parties agreed that the statute of limitations for a breach of contract claim is six years, and the district court found that AAI's claim was filed more than six years after

Prince allegedly breached the parties' confidentiality agreement. Accordingly, the district court dismissed AAI's breach of contract claim as barred by the statute of limitations.

AAI contends that Prince breached the agreement each time it used AAI's information and techniques in manufacturing, marketing, and selling the Vortex racquet. Yet, as the district court explained, the continuing-breach theory advanced by AAI does not apply to breach of a contract covering trade secrets. See Intermedics, Inc. v. Ventritex, Inc., 822 F. Supp. 634, 645 (N.D. Cal. 1993). Intermedics involved a breach of contract claim that "consist[ed] entirely of the same acts of misappropriation . . . that would be barred by the statute of limitations applicable to trade secret claims." Id. at 644. The court there explained that allowing such a breach of contract claim to proceed under a continuing-breach theory "would frustrate the legislature's judgment about how the statute of limitations should operate for trade secret cases." Id.

Because AAI's breach of contract claim is similarly based on Prince's alleged breach of the confidentiality agreement, Intermedics is instructive here. Under Arizona law, the statute of limitations for misappropriation of trade secrets is three years. A.R.S. § 44-406 (1990). Furthermore, a "continuing misappropriation constitutes a single claim." Id. Thus, under the analysis of Intermedics, the district court correctly rejected AAI's continuing-breach argument. Although AAI contends that Intermedics does "not purport to reflect Arizona law," AAI fails to cite any contrary Arizona case that involves a breach of contract involving trade secret misappropriation.

AAI also asserts, for the first time on appeal, that the statute of limitations should be deemed tolled during the pendency of the earlier lawsuit because the action involving

the '731 patent was stayed beginning in 1994. However, AAI's trade secret misappropriation claim was not stayed as part of the 1994 stay order; that claim had already been voluntarily dismissed without prejudice in 1992. Nor has AAI pointed to any legal authority for its assertion that the statute of limitations on its breach of contract claim should be deemed tolled during the period that the original misappropriation claim was pending. We therefore uphold the court's dismissal order.

5. AAI next complains that Prince's counsel acted inappropriately by being unduly involved in the preparation of the expert report of Prince's expert witness. For that reason, AAI asserts, the trial court should not have credited the expert's testimony. The district court acknowledged that the expert's credibility was "significantly clouded" by counsel's "extensive involvement" in the preparation of the report, yet nonetheless credited the expert's testimony due to his expertise and qualifications. Based on the highly deferential standard of review that we apply to witness credibility determinations by the trial court, Mass. Bay Transp. Auth. v. United States, 254 F.3d 1367, 1376 (Fed. Cir. 2001), we reject AAI's argument regarding the credibility of Prince's expert.

6. Finally, AAI argues that the district court should have granted its request for a jury trial. The district court ruled that AAI forfeited its right to a jury trial when it failed to serve its jury demand on Prince in a timely manner, as required by Federal Rule of Civil Procedure 38(b). Noting that the Ninth Circuit has held that a district court may not overlook a party's failure to make a timely jury trial demand when the failure to make a timely demand results from an oversight or inadvertence, Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1086 (9th Cir. 2002), the district court found that AAI had "offered no

explanation beyond inadvertence or oversight to excuse the omission" and therefore denied the jury trial request.

On appeal, AAI argues that the "right to a trial by jury is too important to be cast aside for a procedural technicality" and that one's constitutional right to a jury "should not be cavalierly dismissed." However, the district court correctly ruled that a party "should not be relieved of the responsibility of complying with the applicable procedural rules" where it has failed to "show some reason beyond oversight or inadvertence." See Boice v. United States, 87 F.R.D. 494, 496 (D. Ariz. 1980). We therefore affirm the district court's denial of AAI's motion.