**In re Robert T. BASS.**

No. 02–1046.
Reexamination Nos. 90/004, 127 and 90/004, 403.

United States Court of Appeals, Federal Circuit.

Dec. 17, 2002.

David K. Friedland, Lott & Friedland, P.A., of Coral Gables, Florida, argued for appellant. With him on the brief was Ury Fischer.

Raymond T. Chen, Associate Solicitor, Office of the Director, United States Patent and Trademark Office, of Arlington, Virginia, argued for appellee. With him on the brief were John M. Whealan, Solicitor; and Linda Moncys Isacson, Associate Solicitor.

Before MAYER, Chief Judge, CLEVENGER and RADER, Circuit Judges.

MAYER, Chief Judge.

Robert T. Bass appeals the decision of the United States Patent and Trademark Office, Board of Patent Appeals and Interferences, *Ex parte Bass*, 1999 WL 33205690, No. 98–2721 (Feb. 10, 1999), affirming the examiner's rejection of claims 1–4 as obvious under 35 U.S.C. § 103 (2000). We affirm.

*On November 2, 2002, 35 USC § 303(a) was amended by the passage of Pub.L. No. 107–273, § 13105, (116 Stat.) 1758, 1900, to add

### Background

Bass is the owner of United States Patent No. 4,473,026 ("the '026 patent") directed to a fishing boat. In January of 1996, a third party requested a reexamination (Control No. 90/004,127), citing United States Design Patent No. 219,891 to William Cargile ("Cargile"), several Cargile brochures, and a scaled engineering drawing in Lucander, "Fishing Vessel Designed for Engine Aft," *National Fisherman,* Vol. 57, No. 2 (June 1976), ("Lucander"). The examiner initially found claims 1–8 of the '026 patent allowable, and in October of 1996, issued a Notice of Intent to Issue Reexamination Certificate ("NIRC"). Shortly thereafter, but before the reexamination certificate issued, the same third party requested a second reexamination (Control No. 90/004,403) submitting the same references, six "Closet publications," and a declaration by Robert Schofield, a boat designer, that contained an illustration of a view of a boat based entirely on the drawing in the Lucander publication. The examiner granted the second request for reexamination, stating that Lucander raised a substantial new question as to patentability, and merged the two reexamination proceedings. The examiner then rejected claims 1–4 based upon Cargile and Lucander. The board affirmed the rejection finding that Lucander alone taught all of the limitations of claims 1–4.

### Discussion

■ We review the board's conclusions of law *de novo* and affirm its findings of fact if they are supported by substantial evidence. *In re Dial–A–Mattress Operating Corp.,* 240 F.3d 1341, 1344, 57 USPQ2d 1807, 1810 (Fed.Cir.2001). Relying on *In re Portola Packaging,* 110 F.3d 786, 42 USPQ2d 1295 (Fed.Cir.1997),* and Manual

"[t]he existence of a substantial new question of patentability is not precluded by the fact that a patent or printed publication was previ-

of Patent Examining Procedure ("MPEP") § 2242(A)(2) (8th Ed. August 2001), Bass argues that the PTO was not permitted to consider any of the references discussed in the first reexamination, either in granting the second reexamination or in evaluating the merits of the merged proceeding. Section 303(a) of title 35 states in pertinent part: "Within three months following the filing of a request for reexamination under the provisions of section 302 of this title, the Director will determine whether *a substantial new question of patentability affecting any claim of the patent concerned is raised* by the request, with or without consideration of other patents or printed publications." 35 U.S.C. § 303(a) (2001) (emphasis added). In *Portola Packaging,* we interpreted that language to mean that previously considered prior art from a prior proceeding could not raise a substantial new question of patentability. 110 F.3d at 791, 42 USPQ2d at 1300; *see* MPEP § 2242(A)(2) (setting forth the PTO's guidelines for compliance with *Portola Packaging* ). Because a NIRC had issued, Bass argues that Lucander was previously considered prior art which the PTO could not reconsider in either the second reexamination or the merged proceeding.

■■ Until a matter has been completed, however, the PTO may reconsider an earlier action. *See In re Borkowski,* 505 F.2d 713, 718, 184 USPQ 29, 32–33 (CCPA 1974). A reexamination is complete upon the statutorily mandated issuance of a reexamination certificate, 35 U.S.C. § 307(a); the NIRC merely notifies the applicant of the PTO's intent to issue a certificate. A NIRC does not wrest jurisdiction from the PTO precluding further review of the matter. Because no prior completed proceeding had reviewed the

Lucander and Cargile references, the PTO was free to reconsider, and ultimately base a rejection upon them.

■■ Bass also disputes the board's finding that Lucander renders claims 1–4 of the '026 patent obvious, arguing specifically that Lucander does not disclose a "low profile," "motorized sports boat" that "had the control console been placed against the bulkhead, the pilot would then be in the cockpit and have limited visibility." '026 patent, col. 4, ll. 26–57. In examining a patent claim, the PTO must apply the broadest reasonable meaning to the claim language, taking into account any definitions presented in the specification. *In re Yamamoto,* 740 F.2d 1569, 1571, 222 USPQ 934, 936 (Fed.Cir.1984). Words in a claim are to be given their ordinary and accustomed meaning unless the inventor chose to be his own lexicographer in the specification. *Lantech, Inc. v. Keip Mach. Co.,* 32 F.3d 542, 547, 31 USPQ2d 1666, 1670 (Fed.Cir.1994).

■ The specification of the '026 patent defines "motorized sports boat" as a boat that "includes a cabin and has a length in the range of about 20 to 50 feet." '026 patent, col. 1, ll. 10–12. The specification also defines the term "low profile" to mean "a motorized sports boat whose cabin has a height that is roughly at the level of the sheer line of the boat hull." *Id.* at col. 1, ll. 18–21. Lucander clearly discloses a boat that includes a cabin and is between 20 to 50 feet long; however, Bass argues that because Lucander discloses a boat that has a fish hold, it cannot be a sports boat. Bass chose to define "motorized sports boat" in the specification. He cannot change or modify that definition on appeal. *See Lear Siegler, Inc. v. Aeroquip*

---

ously cited by or to the Office or considered by the Office," thereby overruling *Portola Packaging.* Because the change only applies

to decisions made by the PTO on or after its enactment, this case is not affected.

*Corp.*, 733 F.2d 881, 889, 221 USPQ 1025, 1031 (Fed.Cir.1984) ("[T]he place to [redefine or modify terms] is in the specification of the inventor's application, and the time to do so is prior to that application acquiring its own independent life as a technical disclosure through its issuance as a United States patent."); *General Electric Co. v. United States*, 215 Ct.Cl. 636, 572 F.2d 745, 753, 198 USPQ 65, 71 (1978) ("[W]ords used in a patent cannot be given their ordinary and accustomed meaning where it appears from the patent that the inventor has attached some different and/or specific meaning to them.").

Bass admitted before the board that Lucander discloses a boat with a forward cabin "whose level is substantially equal to that of the sheer line," but argued that the pilothouse is a "second cabin" thereby transforming Lucander from a low profile boat to a high profile boat. The ordinary meaning of pilothouse, however, precludes it from being construed as a second cabin. Besides, as the board correctly observed, "low profile" is defined so that the boat "includes a cabin," but does not exclude the possibility of having a second cabin above the sheer line. *See* '026 patent, col. 1, l. 10. So, even though the pilothouse may be above the sheer line, Lucander still discloses a cabin below it. Therefore, substantial evidence supports the board's finding that Lucander discloses a low profile motorized sports boat as defined by the specification.

Finally, Bass argues that, unlike his claimed invention, if the cockpit were placed on the Lucander boat as claimed, the pilot would have no visibility rather than the claimed limited visibility. Giving "limited visibility" its broadest reasonable meaning supports the board's finding that Lucander discloses limited visibility. A pilot standing on Lucander's boat would have total visibility laterally and backwards and limited visibility forward.

### Conclusion

Accordingly, the decision of the United States Patent and Trademark Office, Board of Patent Appeals and Interferences is affirmed.

*AFFIRMED.*