**AUTOMATED MERCHANDISING SYSTEMS, INC., Plaintiff,**

**v.**

**Teresa Stanek REA, Acting Under Secretary of Commerce for Intellectual Property and Acting Director of the United States Patent and Trademark Office, et al., Defendants.**

**Case No. 1:13–cv–1289 (AJT/JFA).**

United States District Court,
E.D. Virginia,
Alexandria Division.

Signed Aug. 6, 2014.

James Daniel Berquist, Donald Lee Jackson, Davidson Berquist Jackson & Gowdey LLP, Arlington, VA, for Plaintiff.

Dana J. Boente, U.S. Attorney, David Moskowitz, Assistant U.S. Attorney, U.S. Attorney's Office, Alexandria, VA, Lore Unt and William LaMarca, Office of the Solicitor, United States Patent & Trademark Office, Alexandria, VA, for Defendants.

### ORDER

ANTHONY J. TRENGA, District Judge.

In this action, plaintiff Automated Merchandizing Systems, Inc. ("AMS") seeks an order compelling the defendants [1] to terminate four *inter partes* reexaminations currently pending before the USPTO based on a consent judgment entered in a federal court patent infringement action that involved the same patents [2] as those under reexamination. The USPTO opposes that request on the grounds that the relied-upon federal court action did not actually adjudicate the validity of the patents at issue in the reexamination proceedings and therefore does not require the termination of its reexamination proceedings under the applicable statute. The parties have filed cross motions for summary judgment [Doc. Nos. 31 and 35]. For the reasons below, plaintiff's motion for summary judgment will be DENIED and defendants' motion for summary judgment will be GRANTED.

### Background

This case has a complicated procedural history, briefly summarized as follows:

On December 29, 2003, AMS filed a patent infringement action against Crane Corporation ("Crane") in the U.S. District Court for the Northern District of West Virginia, Civil Action 3:03–cv–88 ("the West Virginia Action"). That action initially involved the '402 patent, but on September 1, 2004, the '634 patent was issued; and that same day, AMS initiated a second infringement suit against Crane asserting its infringement of the '634 patent. That action together a declaratory action suit that Crane had initiated were then consolidated into the West Virginia Action. On

---

1. Defendants are Teresa Stanek Rea, in her official capacity as Acting Under Secretary of Commerce for Intellectual Property and Acting Director of the United States Patent and Trademark Office, and the United States Patent and Trademark Office (collectively "defendants" or "USPTO").

2. The patents at issue are United States Patent Nos. 6,384,402 ("the '402 Patent"), 6,794,634 ("the '634 Patent"), 7,191,915 ("the '915 Patent"), and 7,343,220 ("the '220 Patent") (collectively "the AMS Patents").

June 2, 2008, after the '915 and the '220 patents were issued, AMS initiated a third infringement action against Crane based on those two patents, which, on December 2, 2008, was also consolidated into the West Virginia Action. Crane defended the West Virginia Action on the grounds that the AMS Patents were invalid, unenforceable, and void. In January and February 2011, Crane initiated the *inter partes* reexaminations at issue in this case, claiming, as it did in the West Virginia Action, that the AMS Patents are invalid.[3]

On March 15, 2012, AMS and Crane settled their disputes in the West Virginia Action. As part of that settlement, they entered into a stipulation that the AMS Patents were valid and agreed upon a consent judgment to be presented for entry in the West Virginia Action. On June 11, 2012, upon joint motion of AMS and Crane, the district court entered the following Consent Judgment in the West Virginia Action:

> Plaintiff Automated Merchandising Systems, Inc. ("AMS") and Defendant Crane Co. ("Crane") hereby consent to entry of judgment as follows:

> 1. The Court vacates all existing summary judgment orders and opinions as well as the December 12, 2011 *Markman* Order;

> 2. The parties stipulate that United States Patent Nos. 6,384,402; 6,794,634; 7,191,915; 7,343,220; and 6,732,014 are valid; and

> 3. All claims in this action are dismissed with prejudice.

> Each party shall bear its own attorneys' fees and costs.

> This judgment is final, and all relief not expressly granted herein is hereby denied.

> IT IS SO ORDERED.

Admin. Rec. at 493.[4]

35 U.S.C. § 317(b), as it applies to the issue before the Court,[5] (hereinafter " § 317(b)") provides:

> Once a final decision has been entered against a party in a civil action arising in whole or in part under section 1338 of title 28, that the party has not sustained its burden of proving the invalidity of any patent claim in suit ..., then neither that party nor its privies may thereafter request an inter partes reex-

---

**3.** Crane had previously initiated *ex parte* reexaminations before the USPTO with respect to two of the four AMS Patents that were initially at issue in the West Virginia Action. On June 13, 2005, the West Virginia Action was stayed while the USPTO processed the *ex parte* reexaminations. Crane then initiated additional *ex parte* reexaminations with respect to certain additional claims set forth in the AMS Patents.

**4.** In late April through December 2012, the examiner issued his final Office actions in each of the *inter partes* proceedings regarding the AMS Patents and in each decision rejected as unpatentable all claims at issue *See* Admin. Rec. at 1688 (rejecting on April 30, 2012 in the 95/000,607 proceeding all claims of the '915 patent as unpatentable and issuing a right of appeal notice.); *id.* at 4 (rejecting on

May 3, 2012 in the 95/000,604 proceeding all claims of the '634 patent as unpatentable and issuing a right of appeal notice.); *id.* at 1163 (rejecting on May II, 2012 in the 95/000,606 proceeding all claims of the '220 patent as unpatentable and issuing a right of appeal notice.); *id.* at 554 (rejecting on December 3, 2012 in the 95/000,605 proceeding all claims of the '402 patent as unpatentable and issuing a right of appeal notice.)

**5.** 35 U.S.C. § 317(b) was amended effective September 16, 2012 as part of the America Invents Act ("AIA"). However, the 2002 version of this statute continues to apply to *inter partes* reexamination proceedings filed before that date, and thus, provides the statutory language applicable to all four of the *inter partes* reexaminations at issue in this case. *See* Pub. L. 112–29, Sec. 6(c)(3)(C).

amination of any such patent claim on the basis of issues which that party or its privies raised or could have raised in such civil action or inter parties reexamination proceeding, and an inter partes reexamination requested by that party or its privies on the basis of such issues may not thereafter be maintained by the Office, notwithstanding any other provision of this chapter.

On June 20, 2012, based on the Consent Judgment issued in the West Virginia Action, AMS petitioned the USPTO to terminate pursuant to § 317(b) the *inter partes* reexamination proceedings as to the AMS Patents. On November 19, 2012, the USPTO refused to terminate the *inter partes* reexamination proceedings on the grounds that the Consent Judgment failed to satisfy the requirements of § 317(b), dismissing all four petitions. On December 17, 2012, AMS filed a second petition, with further supporting documentation, to terminate the *inter partes* proceedings pertaining to only one of the four AMS Patents (the '634 patent), but on May 30, 2013, the USPTO dismissed that second petition on the same grounds, *viz.*, that the Consent Judgment failed to meet the requirements for termination provided by § 317(b).

On June 23, 2013, AMS filed a request for reconsideration of its petition to terminate *inter partes* reexamination proceedings based on the West Virginia Action.[6]

On October 16, 2013, AMS filed this action to reverse the USPTO's denial of AMS' four initial petitions to terminate, as well as its dismissal of AMS' second petition to terminate as to the '634 patent.[7] Before the Court are cross motions for summary judgment.

### Standard

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions and affidavits demonstrate that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law. *See* Fed, R. Civ. P. 56; *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

 The court's review of agency action under the APA is the administrative record of the relevant administrative proceedings. *See Tafas v. Dudas,* 530 F.Supp.2d 786, 793 (E.D.Va.2008) ("the focal point for judicial review should be the administrative record already in existence.") (quoting *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973)); *see also Fort Sumter Tours, Inc. v. Babbitt,* 66 F.3d 1324, 1335–36 (4th Cir. 1995) (finding that judicial review of agency action is "generally confined to the ad-

---

**6.** On September 27, 2013, the Patent Trial and Appeal Board ("PTAB") affirmed the rejection of all claims in two of the AMS Patents (the '220 patent and the '915 patent) on the grounds that they were unpatentable. Presently pending before the PTAB is AMS' appeal with respect to the rejection of claims in the two other AMS Patents (the '634 patent and the '402 patent), but the Court is not aware of any decision in that appeal as of the time of filing of this Order. In any event, the pend-

ing issues before the PTAB relate to the validity of certain of the AMS Patents' claims, not the propriety of the USPTO's denial of AMS' petitions to terminate the *inter partes* review of the AMS Patents.

**7.** On October 25, 2013, the USPTO denied AMS' petition for reconsideration of its rejection of the second petition to terminate *inter partes* review of the '634 patent.

ministrative record"); *Walter O. Boswell Memorial Hosp. v. Heckler,* 749 F.2d 788, 792 (D.C.Cir.1984) (holding that the reviewing court "should have before it neither more nor less information than did the agency when it made its decision"). An agency's actions must be set aside if the court finds that the agency action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law...." 5 U.S.C. § 706(2)(A). An agency abuses its discretion "where the decision [by that agency] is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors." *Exelixis, Inc. v. Kappos,* 906 F.Supp.2d 474, 480 (E.D.Va.2012). The scope of review under this standard is "narrow," and "a court is not to substitute its judgment for that of the agency." *Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983).

**8.** The USPTO's position in this action is identical as to each of its denials of AMS' four petitions to terminate *inter partes* reexaminations. For convenience, the Court will cite only to the USPTO's position in support of its most recent denial of the AMS' petitions, that of May 30, 2013, as to AMS' second petition to terminate the *inter partes* reexamination of the '634 patent.

**9.** The Consent Judgment conclusively and finally dealt with all of the outstanding issues in the West Virginia Action. It was therefore a final judgment from which an appeal could have been taken. *See* Fed.R.Civ.P. 54 (judgment under the Federal Rules is "a decree and any order from which an appeal lies.").

**10.** *See* Admin. Rec. at 383 (wherein the USPTO found that the Consent Judgment acted as a final decision to the extent that it was a "final decision" for purposes of appeal, but that that does not end the inquiry as to § 317(b).)

## Analysis [8]

■ The dispositive issue is whether the Consent Judgment in the West Virginia Action constitutes "a final decision ... that [Crane] has not sustained its burden of proving the invalidity" of the AMS Patents. The USPTO does not dispute that the Consent Judgment is a final decision for the purposes of the West Virginia Action.[9] Rather, it takes the position that a termination of the *inter partes* reexaminations of the AMS Patents is not authorized under Section 317(b) because AMS has not established, through the Consent Judgment or otherwise, that Crane "had not sustained its burden of proving the invalidity" of the AMS Patents.[10] Rather, in rejecting AMS' petitions to terminate the *inter partes* reexaminations, the USPTO adopted the view that a settlement between the parties that is merely memorialized in a consent judgment entered by a court does not constitute the required "final decision" for the purpose of § 317(b) unless the court makes specific findings regarding invalidity.[11] As the USPTO stated in its dismissal of May 30, 2013:

**11.** In dismissing AMS' second petition as to the '634 patent on May 30, 2103, the USPTO found that § 317(b) requires the USPTO to terminate an *inter partes* reexamination proceeding where: 1) the third party requester was a party to the litigation; 2) the decision was final; 3) the court decided that the requester/party had not sustained its burden of proving the invalidity of any claim in suit of the patent, which claim is also under reexamination; and 4) the issues raised in the reexamination proceeding are the same issues that were raised or could have been raised by the requester in the civil action. *See* Admin. Rec. at 382. The USPTO found that elements 1 and 2 had been satisfied, but not elements 3 and 4, *Id.* at 383–87. More specifically as to element 4, the USPTO concluded that because AMS had not shown that the Consent Judgment spoke to all of the claims of the four patents at issue in the reexamination proceedings and the record from the West Virginia Action did not establish that the issues raised

The consent judgment merely states that *the parties stipulated* the validity of the '634 patent, which is evidence that an agreement was reached between the parties. There is no language in the consent judgment that suggests that *the court* decided any invalidity issue, let alone that the issue that defendant/requester Crane failed to sustain its burden of proving the invalidity of any patent claim in suit,

. . .

... [P]re–AIA 35 U.S.C. § 317(b) requires more. It specifically requires a final decision *by the court* that the requester/party failed to sustain its burden of proving the invalidity of any patent claim *in suit.* In other words, pre-AIA 35 U.S.C. § 317(b) is not triggered by a mere settlement of the parties.

Admin. Rec. at 384–85 (emphasis original). The USPTO concluded that "[AMS] has not provided any evidence of any final decision by the court that Crane failed to sustain its burden of proving the invalidity of the '634 patent claims in suit, as [AMS] asserts." *Id.* at 385.

The critical issue is whether, in a patent infringement action, a consent judgment that simply references the parties' stipulation that a patent is valid, but which dismisses all claims with prejudice, constitutes a final decision that the alleged infringer did not sustain its burden that the patents were invalid. On the one hand, there would appear to be substantial merit, logic and common sense to AMS' general proposition that à stipulation of patent validity between a patent holder and a patent challenger should end an *inter partes* reexamination instituted by the patent challenger with respect to the patent whose validity was acknowledged in the stipulation.[12] This position, however, fails to account sufficiently for the following critical aspects of this dispute: (1) the language of § 317(b) and the Consent Judgment; (2) the preclusive scope of a final decision in collateral proceedings; (3) the overriding obligations of the USPTO when the validity of a patent is challenged; and (4) *Chevron* deference to the USPTO's interpretation of § 317(b), which was enacted as part of an overall regulatory scheme whose enforcement was committed to the USPTO, together with its own regulations that parallel § 317(b).

Section 317(b), by its terms, requires the final decision to establish that the person who instituted the *inter partes* reexamination, in this case Crane, "failed to sustain its burden of proving the invalidity" of the patents at issue. The Consent Judgment, by its terms, did not enter judgment in favor of AMS on its claims of patent infringement. Rather, it dismissed all claims with prejudice. That dismissal with prejudice reflects the limited scope of the Consent Judgment. It effectively precludes any argument that there had been

---

in the reexamination proceedings were the same as those raised (or which could have been raised) in the West Virginia Action, § 317(b) estoppel did not apply. *Id.* Given the Court's disposition of the pending motions for summary judgment, the Court need not consider these additional specific grounds for the USPTO's decision.

**12.** AMS argues, based on legislative history, that § 317(b) was clearly intended to protect patent holders from abuse and harassment by preventing challengers from attacking patents repeatedly on multiple fronts. *See* Doc. No. 32 at 21 ("Congress could not have intended for pre-AIA 35 U.S.C. § 317(b) to allow a party to *stipulate to the validity of patent claims* in a civil litigation final judgment and simultaneously have the USPTO maintain that same party's *inter partes* reexamination oppositely *arguing that those claims are invalid.* Section 317(b) estoppel was created to preclude this very result.") (emphasis original).

an adjudication in AMS' favor after Crane had failed to sustain its burden of proving patent invalidity. In short, the West Virginia Action ended before either party was put to the test of proving their claims and defenses. The Consent Judgment did reference the parties' stipulation that the patents are valid, but that reference did not constitute an adjudication by the court concerning the merits of those patents or that Crane failed to prove their invalidity. The Consent Judgment simply did not purport to adjudicate, through the entry of a judgment in favor of one party over another, the merits of the parties' respective claims and counterclaims pertaining to the AMS Patents.

■ Even were the Consent Judgment to somehow suggest that there had been an adjudication in AMS' favor, it would be necessary to look behind that Consent Judgment to determine whether there was in fact such an adjudication on the merits of the parties' respective claims and defenses.[13] "In most circumstances, it is recognized that consent agreements ordinarily are intended to preclude any further litigation on the claim presented but are not intended to preclude further litigation on any of the issues presented. Thus consent judgments ordinarily support claim preclusion but not issue preclusion." *Arizona v. California*, 530 U.S. 392, 414, 120 S.Ct. 2304, 2319, 147 L.Ed.2d 374 supple-

mented, 531 U.S. 1, 121 S.Ct. 292, 148 L.Ed.2d 1 (2000) (quoting 18 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 4443, pp. 384–385 (1981)). That distinction between claim preclusion and issue preclusion is particularly salient here where the (1) *inter partes* proceedings were pending at the time the parties settled the West Virginia Action; (2) the USPTO was not a party to the West Virginia Action or the settlement reached in that action; (3) the settlement did not appear to deal with any aspects of the pending *inter partes* proceedings; and (4) the Consent Order did not attempt to enter judgment in favor of either party or dispose of the case in a way that extended that resolution to the pending *inter partes* proceedings.[14] *See United States v. International Bldg. Co.*, 345 U.S. 502, 506, 73 S.Ct. 807, 97 L.Ed. 1182 (1953) ("A judgment entered with the consent of the parties may involve a determination of questions of fact and law by the court. But unless a showing is made that that was the case, the judgment has no greater dignity, so far as collateral estoppel is concerned, than any judgment entered only as a compromise of the parties."). The Consent Judgment's "IT IS SO ORDERED" language, following a recital that "The parties stipulate that United States Patent Nos. 6,384,402; 6,794,634; 7,191,915; 7,343,220;

---

**13.** Plaintiff contends that, because the court in the West Virginia Action denied Crane's Summary judgment motion, "... Crane had failed to sustain its burden to establish invalidity of any of the patent claims challenged." Doc. No. 32 at 6. However, the West Virginia court only found that there were material fact issues preventing the court from granting summary judgment for Crane. *See* Doc. No. 32–16.

**14.** The USPTO argues that there are substantial differences between the statutory estoppel provided by § 317(b) and the principle of *res judicata*. Specifically, the USPTO explains

that reexamination proceedings are far more limited than civil actions, the standards of proof required are different, the parties need not be in privity (the USPTO is not required to have been a party to the civil action), and the purpose of the proceedings are different (reexamination is intended to protect the public interest). *See* Admin. Rec. at 518–520. The USPTO convincingly points out that, if *res judicata* principles generally applied to reexamination proceedings, then § 317(b) would have been unnecessary, and thus estoppel under § 317(b) is necessarily more narrow.

and 6,732,014 are valid," cannot be reasonably understood as anything more than a willingness on the part of the court to dismiss the case based on the parties' settlement without its adjudication of the merits. Admin. Rec. at 493; see *Local No. 93, Int'l Ass'n of Firefighters, AFL–CIO C.L.C. v. City of Cleveland,* 478 U.S. 501, 519, 106 S.Ct. 3063, 92 L.Ed.2d 405 (1986) (finding that consent decrees have attributes of both judgments and contracts, and such decrees must be scrutinized to determine their particular function under the statutory scheme in place).

As referenced above, AMS' position also fails to recognize the obligations of the USPTO, separate and apart from the parties' agreements, once an *inter partes* reexamination is instituted. An *inter partes* reexamination is premised on the existence of a substantial new question as to the validity of the patent under examination; and once the USPTO institutes an *inter partes* reexamination, albeit at the instigation of a requester, the reexamination is not under the control of the instigating entity, here Crane, but rather the USPTO, which has independent statutory duties and obligations to consider the validity of the challenged patent. *See* 35 U.S.C. § 313 (the USPTO has an obligation to review patents if it determines there are substantial new questions of patentability); *see also Callaway Golf Co. v. Kappos,* 802 F.Supp.2d 678, 686–87 (E.D.Va.2011) (". . . the PTO correctly concluded that the *inter partes* reexamination statute provides a nondiscretionary duty, requiring the PTO to conduct a reexamination once it receives a request and makes the initial finding

that a substantial new question of patentability exists. This conclusion is based on Congress's inclusion of 'shall' in § 313, which provides that 'the determination shall include an order for *inter partes* reexamination[.]' ") (quoting 35 U.S.C. § 313). As the USPTO points out, it stands in a different position from a private litigant who has settled challenges to its patent. The USPTO was not a party to the civil action and the purpose of the reexamination proceedings is to protect the public interest rather than private interests or rights; and for these reasons, the general principles of *res judicata* do not apply to it. *See In re Recreative Techs. Corp.,* 83 F.3d 1394, 1396–97 (Fed. Cir.1996) ("[t]he reexamination statute's purpose is to correct errors made by the government . . . and if need be to remove patents that never should have been granted.") (quoting *Patlex Corp. v. Mossinghoff,* 758 F.2d 594, 604 on reh'g, 771 F.2d 480 (Fed.Cir.1985)). It therefore cannot be said that the USPTO's obligations can be displaced or pre-empted, or that it can be foreclosed from performing those obligations, by virtue of a private settlement concerning the validity of a patent under examination. Under the statute, the USPTO is directed to discontinue an *inter partes* reexamination based on collateral proceedings only where a court has already finally adjudicated a claim of invalidity on the merits, not simply in form, through the entry of a "final decision," but in substance, through an actual adjudication on the merits.[15] That clearly did not happen in the West Virginia Action.

**15.** AMS cites to several USPTO decisions that it characterizes as inconsistent with its interpretation and application of Section 317(b) in this case. With the exception of the *Codian* petition [Doc. No. 32–30], the language of the relied upon consent judgments in those decisions was significantly different than the language of the Consent Judgment entered in the West Virginia Action in that it substantially tracked the language of § 317(b). *See* Doc. No. 32–36 (granting petition to terminate *inter partes* reexamination where the consent judgment entered stated that "Superior Essex [the defendant/requester of the '1751 proceed-

The Court's resolution of this action must also extend *Chevron* deference to the USPTO's interpretation of Section 317(b). In that regard, it must be acknowledged that Section 317(b) is not entirely clear as to what is required before a requester of an *inter partes* reexamination will be deemed to have "not sustained its burden of proving the invalidity of any patent claim in suit." Nevertheless, the USPTO's interpretation of what that language means is reasonable; and for that reason, the Court must therefore defer to the USPTO's interpretation of Section 317(b) and related regulations. Section 317(b) is part of an intricate regulatory scheme concerning the issuance and review of patents that has been committed to the institutional competence and objectives of the USPTO, As such, the USPTO's interpretation of that section concerning its authority to proceed with *inter partes* reexaminations in the wake of litigation, to the extent consistent with the statutory language, is precisely the type of issue that is committed to the sound judgment of the USPTO. *See Chevron U.S.A. Inc. v. Natural Resources Def. Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (finding that "[w]e have long recognized

that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations."). That principle is particularly applicable here since the USPTO has promulgated duly authorized regulations set forth at 37 C.F.R. 1.907(b) that are essentially identical to § 317(b).[16] *See Ohio Valley Envtl. Coal. v. Aracoma Coal Co.,* 556 F.3d 177, 193 (4th Cir.2009) (quoting *Auer v. Robbins,* 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997)) (An agency's interpretation of its own regulations is "controlling unless plainly erroneous or inconsistent with the regulation.")

For the above reasons, the Court finds that the USPTO's decision to dismiss AMS' petitions to terminate the four *inter partes* reexamination proceedings was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. The decisions of the USPTO are therefore AFFIRMED.

## Conclusion

Based on the foregoing, the Court finds and concludes that the USPTO is entitled to summary judgment; and it is hereby

---

ing] has not sustained its burden of proving the invalidity of any of the asserted claims (1–34) of the '575 Patent [the patent under reexamination].''); *see also* Doc. No. 38–38 (wherein the USPTO terminated an *inter partes* reexamination, accepting for purposes of § 317(b) a "Stipulation and Order of Dismissal" that stated that "[t]he parties further stipulate and request that the Court order that the Bosch Defendants, namely Robert Bosch GmbH and Bosch Security Systems, Inc., have not sustained their burden of proving invalidity of ... any of claims 1–22 of U.S. Patent No. 7,868,912.''). The *Codian* decision does appear to be somewhat inconsistent with the USPTO's application of Section 317(b) in this case, but that decision, when viewed within the totality of the USPTO's decisions concerning the application of Section 317(b), does not persuade the Court that the USPTO's interpretation and application of Section

317(b) is so varied, unsettled or uncertain that the Court should not defer to it in this case.

**16.** 37 C.F.R. 1.907(b) provides:

Once a final decision has been entered against a party in a civil action arising in whole or in part under 28 U.S.C. 1338 that the party has not sustained its burden of proving invalidity of any patent claim-in-suit, then neither that party nor its privies may thereafter request inter partes reexamination of any such patent claim on the basis of issues which that party, or its privies, raised or could have raised in such civil action, and an inter partes reexamination requested by that party, or its privies, on the basis of such issues may not thereafter be maintained by the Office. 37 C.F.R. 1.907(b).

ORDERED that the Motion for Summary Judgment of plaintiff Automated Merchandizing Systems, Inc. [Doc. No. 31] be, and the same hereby is, DENIED; and it is further

ORDERED that the Motion for Summary Judgment of defendants Teresa Stanek Rea, in her official capacity as Acting Under Secretary of Commerce for Intellectual Property and Acting Director of the United States Patent and Trademark Office, and United States Patent and Trademark Office [Doc. No, 35] be, and the same hereby is, GRANTED; and it is further

ORDERED that the decisions of the United States Patent and Trademark Office dated November 19, 2012 and May 30, 2013 be, and the same hereby are, AFFIRMED.

The Clerk is directed to forward copies of this Order to all counsel of record and enter judgment in favor of defendant pursuant to Fed.R.Civ.P. 58.

