HUGHES, Circuit Judge,
concurring-in-part, dissenting-in-part.
I agree with the majority that the Patent Trial and Appeal Board properly held that the '350 patent claims at issue were *1337 invalid under § 101. I also agree that, in this case, we need not reach whether the Board is authorized to' apply its “broadest reasonable interpretation” rule in a post-grant review. Thus, I agree that we should affirm the Board’s decision on the merits.
In reaching that conclusion, however, the majority impermissibly expands this court’s jurisdiction and our scope of review to second-guess the Board’s initial determination that the patent at issue is a “covered business method patent.” Our review of that question is barred by the plain language, structure, and purpose of the post-grant review provisions; and by our recent precedent interpreting an identical statutory bar on review in the inter partes review provisions. I cannot agree with the majority’s evasion of the statutory bar by its mere reframing of the issue for review as a question of the Board’s “ultimate authority to invalidate,” rather than the Board’s authority to ■ institute. That approach defeats Congress’s clearly expressed intent. And the majority offers no compelling reason why its approach is desirable, other than its appetite for arrogating to the court the Board’s statutory authority to finally decide which patents are “covered business method patent[s]” suitable for review. Because the statute precludes review of the Board’s institution decision that Versata’s patent is a “covered business method patent,” I respectfully dissent-in-part.
I
At the outset, it is important to note that this is not a case about whether Congress has precluded “judicial review of government actions that alter the legal rights of an affected person.” Maj. Op. at 1319. To the contrary, the statute clearly provides for review of the Board’s invalidity decision, which is the government action that alters the legal right of the patent holder. See 35 U.S.C. § 329. Rather, this ease is about whether Congress can, and did, preclude review of whether the Board rightfully undertook that review in the first place. Our authority to review that type of decision, whether framed in terms of the Board’s institution authority or its ultimately authority to invalidate, is separate and distinct from our authority to review the invalidation itself.
“To determine whether a particular statute precludes judicial review, we look to its express language, the structure of the statutory scheme, its legislative history and purpose, and the nature of the administrative action involved.” Pregis Corp. v. Kappos, 700 F.3d 1348, 1357-58 (Fed.Cir.2012) (citing Block v. Cmty. Nutrition Inst., 467 U.S. 340, 345, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984)).
The presumption of judicial review noted by the majority is not insurmountable. “Congress can, of course, make exceptions to the historic practice whereby courts review agency action.” Bowen v. Mich. Acad. of Family Physicians, 476 U.S. 667, 672-73, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986); see also 5 U.S.C. § 701 (“This chapter applies ... except to the extent that ... statutes preclude judicial review-”). To overcome the presumption of review, we must find “clear and convincing evidence” of legislative intent to preclude review. Abbott Labs. v. Gardner, 387 U.S. 136, 141, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). For example, the presumption may be overcome by “specific language or specific legislative history that is a reliable indicator of congressional intent, or a specific congressional intent to preclude judicial review that is fairly discernible in the detail of the legislative scheme.” Bowen, 476 U.S. at 673, 106 S.Ct. 2133 (internal quotation marks omitted); see, e.g., Lindahl v. Office of Pers. Mgmt., 470 U.S. 768, 779-80 n. 13, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985) (recog *1338 nizing that 5 U.S.C. § 8128(b) precludes all review of the Secretary of Labor’s compensation decision under the Federal Employee Compensation Act); Collins v. United States, 67 F.3d 284, 287-88 (Fed.Cir.1995) (finding that the plain language of the Military Claims Act, which states that “the settlement of a claim under [the Act] is final and conclusive,” provides clear and convincing evidence of legislative intent to preclude judicial review). Further, reviewability is not an all or nothing question: Congress may allow review of some issues underlying a decision, but prohibit review of others. See, e.g., Lindahl, 470 U.S. at 779-80, 105 S.Ct. 1620 (holding 5 U.S.C. § 8347(c) bars review of agency’s factual determinations, but not questions of law and procedure); Harris v. Shinseki, 704 F.3d 946, 948 (Fed.Cir.2013) (noting that 38 U.S.C. § 7292 precludes review of the Veterans Court’s factual determinations or applications of law to fact, but allows review of questions of law).
Whether the presumption of review is overcome in this case depends on two issues. The first is whether the bar on judicial review of the Board’s institution decisions in 35 U.S.C. § 324(e) is limited to interlocutory appeals, as Versata argues, or whether it also applies to appeals from the Board’s final written decision on the merits. The answer to that question should end the inquiry. But the majority has decided that some statutory requirements for instituting review can be re-framed, which raises a second issue: whether an institution decision that falls within the scope of § 324(e) is nonetheless renewable as a “predicate question” regarding the Board’s ultimate authority to determine validity.
A
The plain language of § 324(e) unambiguously bars judicial review — at any time— of the Board’s decision to institute post-grant review. Section 324(e) states, “The determination by the Director whether to institute a post-grant review under this section shall be final and nonappealable.” 35 U.S.C. § 324(e). Nothing in this language suggests the bar is limited to interlocutory appeals. There is no temporal limitation. Nor is there an exception for appeals from a final written decision. In other contexts, when Congress desired to prohibit only interlocutory appeals, it included express language to that effect. See, e.g., 8 U.S.C. § 1160(e) (“There shall be no ... judicial review of a determination respecting an application of special status under this section except ... in the judicial review of an order of exclusion of deportation.... ”); 12 U.S.C. § 1818(i)(1) (barring review of the Federal Reserve’s decision to proceed with an administrative enforcement action “except as otherwise provided in this section,” including on review of a final cease-and-desist order).
The plain language of related provisions in §§ 329 and 328 supports this interpretation. Those provisions authorize a party to appeal the Board’s final written decision to this court, but only refer to issues addressed exclusively during the merits phase of a post-grant review. Section 329 states, “A party dissatisfied with the final written decision of the [Board] under section 328(a) may appeal the decision [to the Federal Circuit].” 35 U.S.C. § 329 (emphasis added). Section 328 defines the “final written decision” as “a final written decision with respect to the patentability of any patent claim challenged.... ” Id. § 328(a) (emphasis added). This language reinforces Congress’s desire for this court to review the substantive issues of patenta-bility addressed by the Board in a final written decision, not the various issues decided during the decision to institute— which § 324(e) deems “final and nonap-pealable.”
*1339 The structure of the post-grant review process further clarifies the duration of the bar in § 324(e). Post-grant reviews are divided into two distinct phases. First, the Board determines whether to institute review, based on the information in the petition for review and any response by the patent owner. See id. § 324. Second, if the Board grants review, the Board considers the merits of the petitioner’s challenge and issues a final written decision on the validity of the challenged claims. Under this divided structure, the requirements for instituting review are not revisited during the merits phase of review. Section 324(e) confirms that the decision to institute is “final.” Id. § 324(e). In the same breath, § 324(e) states that the decision is “nonappealable.” Id. To be consistent with the clear division between the two phases- Congress imprinted into the statute, “nonappealable” is best interpreted to maintain this division at the appellate level by insulating the various institution decisions from review, even on appeal from the separate and distinct merits phase.
This interpretation is also supported by the purpose of post-grant reviews. Congress intended post-grant reviews to provide a “quick and cost effective alternative[ ] to litigation.” H.R.Rep. No. 112-98, pt. 1, at 47-48 (2011), 2011 U.S.C.C.A.N. 67, 77-78. If we interpret § 324(e) to allow this court to second-guess the Board’s institution decisions on appeal from a final written decision, however, we will create the kind of “unnecessary and counterproductive litigation costs” that Congress intended these proceedings to avoid. Id. at 40 (2011). By the time the Board’s final written decision reaches this court, the parties and the Board will have devoted considerable resources to resolving the validity issues in question. And district courts will often have stayed related proceedings, in anticipation of a simplification of the issues for trial. If this court has authority to reverse the Board’s institution decision, thereby vacating its final written decision on validity, all of this time and expense will be wasted. The parties will have to return to district court to litigate the same validity issues that the Board decided — even if this court agrees with the Board’s ultimate validity determination. Congress could not have intended this result. To avoid creating a more costly and less efficient process, we must interpret § 324(e) according to its plain language to bar review of the decision to institute even after a final written decision on the merits.
In sum, the plain language, structure, and purpose of the post-grant review provisions provide clear and convincing evidence that Congress did not intend to limit § 324(e) to interlocutory appeals. Congress intended § 324(e) to bar review of the Board’s institution decisions at any time, even on appeal from the final written decision. One such decision is whether the patent challenged is a “covered business method patent.” America Invents Act (AIA), Pub.L. No. 112-29, § 18(a)(1)(E), 125 Stat. 284, 330 (2011) (“The Director may institute a transitional proceeding only for a patent that is a covered business method patent.”). The Board makes this determination. as part of its decision to institute, and does not revisit the issue during the merits phase. Thus, § 324(e) precludes review of the Board’s covered-business-method determination in this appeal.
B
The majority agrees that § 324(e) bars review of the Board’s decision to institute even after a final written decision. Maj. Op. at 1315 (“[T]he statute expressly instructs that we may not [review the decision to institute].”). But the majority refuses to end the inquiry with Congress’s plainly expressed intent. To keep the final say over the meaning of “covered business method patent,” the majority reframes the *1340 issue as a “limit on [the Board’s] invalidation authority under § 18,” which falls outside the scope of § 324(e). Maj. Op. at 1320. I cannot agree with this approach.
The statute describes the “covered business method patent” requirement (CBM requirement) as a limit on the Board’s authority to institute review. Section 18 states that “[t]he Director may institute a transitional proceeding only for a patent that is a covered business method patent.” AIA § 18(a)(1)(E). The statute then expressly bars our review of the institution decision: “The determination by the Director whether to institute a post-grant review under this section shall be final and nonappealable.” 35 U.S.C. § 324(e). Thus, under the plain language of the statute, the Board has unreviewable authority to decide whether a patent is a “covered business method patent.”
The majority proposes that if we call the CBM requirement something else — not only a limit on the Board’s authority to institute review, as the statute says, but also a limit on the Board’s ultimate authority to invalidate the patent — then we can review the issue. But our task is to apply the language of the statute, not to rewrite it. And the language of the statute expressly ties the CBM requirement to the Board’s unreviewable decision to institute, not the Board’s ultimate authority to invalidate. By using different language than that which Congress employed, the majority expands the scope of our review to include the same substantive issue— whether a patent is a “covered business method patent” — that Congress barred from review in § 324(e).
The majority fails to identify a statutory basis for its proposed reframing of the issue. It summarily declares, without any supporting citation, that the CBM requirement should be treated as a limit on the Board’s authority to invalidate because it “defines the PTAB’s authority to invalidate under § 18.” Maj. Op. at 1320. But nowhere does the statute describe the CBM requirement as a limit on the Board’s authority to invalidate. Cf. Timken U.S. Corp. v. United States, 421 F.3d 1350, 1357 (Fed.Cir.2005) (“Not every agency violation of a statutory command results in the sanction of invalidating the agency action taken pursuant to the statute.”). To the extent that statement is accurate, it is only-because the statute provides that the Board “may institute a transitional proceeding only for a patent that is a covered business method patent.” AIA § 18(a)(1)(E). And any limit on the Board’s authority to institute review is indirectly a limit on its authority to invalidate a patent: If the Board cannot institute review in the first place, it cannot issue a final written decision.
This indirect relationship, however, cannot be enough to find that Congress intended this court to review an institution requirement as a limit on the Board’s ultimate authority to invalidate. Taken to its logical conclusion, this approach would eviscerate § 324(e) in the context of an appeal from a final written decision. All aspects of the Board’s decision to institute would be fair game for review, because all statutory limits on the institution decision are also indirect limits on the Board’s final authority to invalidate. As a result, § 324(e) would only bar review of the Board’s decision to institute in an interlocutory appeal, before the final decision has issued. The majority agrees that § 324(e) is not so limited. Thus, the majority cannot justify treating the CBM requirement as a limit on the Board’s ultimate authority to invalidate solely because that requirement limits the Board’s authority to institute.[1]
*1341 The requirement of a “covered business method patent” is a limit on the Board’s institution decision. That is how the plain language of the statute frames the CBM requirement, not as a limit on the Board’s ultimate authority to invalidate. The majority’s reframing of the issue, while perhaps an interesting academic exercise, is plainly inconsistent with congressional intent. There is clear and convincing evidence that Congress intended § 324(e) to bar review of the Board’s institution decisions at all times. And there is no evidence that Congress intended to exclude from this provision the institution decision of whether the patent is a “covered business method patent.” Accordingly, I conclude that § 324(e) precludes our review of whether Versata’s patent is a “covered business method patent.”
II
The majority’s interpretation of § 324(e) to permit review of whether Versata’s patent is a “covered business method patent” directly conflicts with our precedential decision in In re Cuozzo Speed Technologies, LLC, No. 14-1301, 793 F.3d 1268, 1299-1301, 2015 WL 4097949 (Fed.Cir.July 8, 2015). In that case, we addressed the scope of the statutory bar on judicial review in § 314(d), which provides that “[t]he determination by the Director whether to institute an inter partes review under this section shall be final and nonap-pealable.” 35 U.S.C. § 314(d). We held that this provision “bar[s] review of all institution decisions, even after the Board issues a final decision.” Cuozzo, 793 F.3d at 1273. That holding controls our interpretation of the analogous bar on review in § 324(e), which states, “The determination by the Director whether to institute a post-grant review under this section shall be final and non-appealable.” 35 U.S.C. § 324(e).
To avoid the holding in Cuozzo, the majority continues to rely on its reframing of the CBM requirement as a limit on the Board’s authority to invalidate. But even if that refraining were appropriate, the holding in Cuozzo still could not be distinguished. The relevant provision in Cuozzo states that the Board may only institute an inter partes review if “the information presented in the petition ... and any response ... shows that there is a reasonable likelihood that the petition would prevail.” Cuozzo, 793 F.3d at 1273 (quoting 35 U.S.C. § 314(a)). The appellant argued that the Board violated this provision by instituting review on the basis of prior art not “presented in the petition.” Id. If the appellant was correct, then the Board exceeded its statutory authority to conduct an inter partes review and issue a final written decision, because it violated a statutory limit on instituting review in the first place. Thus, Cuozzo addressed just as much a predicate question of authority to invalidate as we are presented with here.
The majority makes too much of a note in Cuozzo that the alleged defect in that case could have been cured with proper pleading. See Maj. Op. at 1322. For the purpose of determining whether Cuozzo involved a limit on the Board’s authority to invalidate, it is irrelevant whether the alleged defect could have been cured. The fact remains that the pleading was actually defective and therefore the Board exceeded its statutory authority to institute review. Thus, under the majority’s preferred framing, the Board violated an indirect limit on its ultimate authority to *1342 invalidate, at least to the same extent that the Board allegedly did so here.
More importantly, the potential for a proper pleading did not limit the holding in Cuozzo that the plain language of § 314(d) bars review of the Board’s institution decisions. It only noted this fact to establish an alternative ground for declining to review the Board’s decision to institute, specifically by aligning that case with In re Hiniker Co., 150 F.3d 1362 (Fed.Cir.1998). In Hiniker, the appellant alleged that the PTO violated a statutory limit on its authority to institute ex parte reexamination. Id. at 1367. This court found that the PTO corrected the alleged error during the merits phase of review, and therefore “[a]ny error in [the institution] decision was washed clean during the reexamination proceeding.” Id. at 1367. Accordingly, though no statutory provision expressly barred review, the Court declined to review the PTO’s institution decision. Id. The Cuozzo majority suggested that the same was true on the facts there, where “a proper petition could have been drafted.” Cuozzo, 793 F.3d at 1274. But this comparison with Hiniker merely “confirm[ed] the correctness” that the Court could not review the Board’s institution decision in that case. Id. at 1273. It did not limit its prior interpretation of § 314(d) to bar review of all institution decisions. Thus, although the Board’s error in assessing the CBM requirement may not.be “washed clean” in the merits decision — and therefore may have been renewable absent the express bar on review in § 324(e) — that does not distinguish this case from the unqualified holding in Cuozzo that the express bar in § 314(d) “bar[s] review of all institution decisions, even after the Board issues a final decision.” Id. at 1273.
In light of Cuozzo, we are bound to interpret § 324(e) to preclude review of the Board’s assessment of the CBM requirement, even if we label that requirement a limit on the Board’s ultimate authority to invalidate.
III
The bar on judicial review of institution decisions in § 324(e) does not mean that patent owners are without recourse in the extreme case. Even when a statute clearly demonstrates Congress intended to bar judicial review of agency action generally, courts have recognized an “implicit and narrow” exception for agency action that plainly violates an unambiguous statutory mandate. Hanauer v. Reich, 82 F.3d 1304, 1307 (4th Cir.1996); see, e.g., Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958); Key Med. Supply, Inc. v. Burwell, 764 F.3d 955, 962-65 (8th Cir.2014); Am. Soc’y of Cataract & Refractive Surgery v. Thompson, 279 F.3d 447, 456 (7th Cir.2002); Am. Airlines, Inc. v. Herman, 176 F.3d 283, 293-94 (5th Cir.1999); Staacke v. U.S. Sec’y of Labor, 841 F.2d 278, 281-82 (9th Cir.1988); Dart v. United States, 848 F.2d 217, 221-27 (D.C.Cir.1988). In this case, however, the Board’s finding that Versata’s patent constitutes a “covered business method patent” does not violate an unambiguous mandate. The Board reasonably interpreted an unclear statutory term and properly applied its interpretation to Versata’s patent. See Hanauer, 82 F.3d at 1311 (“Because the [agency’s] interpretation of the statute is plausible, it does not violate a clear statutory mandate.”). Accordingly, the clear statutory mandate exception does not apply. We do not have jurisdiction to review the Board’s determination under 35 U.S.C. § 324(e).
IV
At the end of the day, the majority does a lot of hand waving about the presumption of judicial review and an agency’s *1343 authority to take action. But nowhere does the majority actually suggest that it would be inappropriate for Congress to remove the CBM decision from our review. Nor could it, since courts have approved far more drastic limitations on our judicial review. See supra Part I.
But even if we could reasonably make the technical distinction the majority proposes and therefore preserve a narrow reading of the statutory bar, I cannot fathom why we would want to do so. Surely the concern is not to prevent the Board from instituting review of a patent so far outside the meaning of “covered business method patent” that it exceeds any reasonable interpretation of that term. As discussed in Part III, supra, courts have long recognized an exception to statutory bars on review when an agency plainly violates an unambiguous statutory mandate. And in any event, that is not even remotely the case here, where all three judges agree that the Board properly exercised its discretion to institute review of this CBM patent.
Rather, I fear the point of the majority’s position is to wrest from the PTO the final, authority to decide which patents are “covered business method patent[s]” appropriate for § 18 review. But that is not how Congress designed the AIA to work. Congress gave this court the authority to review the merits of the Board’s validity determinations and to ensure those decisions are correct under prevailing law. And it gave the PTO authority to decide which patents merit review in the first place, and insulated that decision from our review.
The majority’s desire to revisit the CBM requirement detracts from this statutory scheme and the intended benefits of § 18 reviews. As Congress recognized, § 18 was intended to “provide a cheaper, faster administrative alternative for reviewing business method patents.” Intellectual Ventures II LLC v. JP Morgan Chase & Co., 781 F.3d 1372, 1380 (Fed.Cir.2015) (Hughes, J. dissenting). If this court may vacate the Board’s invalidity decision on the basis of a threshold decision, the time and resources spent by the parties and the Board in the administrative proceedings will have been squandered, and the parties will likely be forced to needlessly expend even more resources re-litigating the validity issue in district court. And that is true even if the Board’s ultimate invalidity decision was correct.
Congress intended § 324(e) to apply at all times to avoid these consequences. That is why when addressing the issue, Congress plainly said that the Board’s determination was “final” and “nonap-pealable.” And nothing in the statute suggests § 324(e) applies with less force to the CBM requirement than any other institution requirements for § 18 reviews. We should not, therefore, employ an unwarranted technical distinction to find authority to review the Board’s initial assessment that a patent is a “covered business method patent.”
Because we do not have jurisdiction to review the Board’s determination that Ver-sata’s patent is a “covered business method patent,” AIA § 18(d), I respectfully dissent-in-part.

. Indeed, Congress likely intended the term "covered business method patent” not as a *1341 limitation on the Board’s invalidation authority, but as a means of focusing the Board’s resources on “low-quality business[-]method patents,’’ which were of central concern in passing the AIA. 157 Cong. Rec. 9952 (2011) (remarks of Rep. Grimm).